Shaw, C. J.
This was an action of assumpsit, brought to recover the amount of three promissory notes; one a joint and several note, bearing date October 23, 1837, signed by Joseph Strong and Maltby Strong, for $1,047.50, payable in six months; another bearing date 2d February, 1838, for $1,035, in four months; and a third bearing date 15th February, 1838, for $965, in five months. The last two notes were signed “ J. & M. Strong,” and all the three were payable to William Whitney, or order. The first note was signed by Joseph and Maltby Strong, in the proper handwriting of each; the two other notes, and the signatures at the bottom of each, were in the handwriting of Joseph Strong, who has been dead about three years. None of these notes were witnessed, and all were indorsed to .the plaintiff, by William Whitney, without recourse to him, long after they became due. The defendant, among other grounds of defence, specified that the two last-mentioned notes were signed by the said Joseph Strong, without any authority, and that all the three notes had been paid by him.
At the trial, there was evidence tending to prove that J. & M. Strong were copartners, as millers, from June, 1835, to February, 1836, under the firm of J. & M. Strong, and that said firm was then dissolved.
The plaintiff called William Whitney, the payee, as a witness, who testified that he had dealt with the firm of J. & M. Strong, and that he closed their account on his books, on the 12th of August, 1836 ; that the balance of it due him was $1,912.61, and that, for that sum, he received from said Joseph a draft, accepted in the name of J. & M. Strong, and a note, signed in the same manner, payable respectively in four and six months. The witness added, that from this time he had dealings with Joseph alone, and had an open running account against him on his books, which had never been settled; that when said draft and note fell due, they having been negotiated by him, he took them up himself, and charged them in the account against said Joseph; that said draft and note *325 were afterwards renewed by others, signed J. & M. Strong, which he received from Joseph Strong, and which were credited by him, when received, to said Joseph, and charged to him again, when not paid; that this was repeated down to the time when the two notes in suit were given, and that they also were negotiated, and afterwards taken up by said Whitney, and charged to said Joseph in account; that the said joint and several note was received by him from said Joseph, as a renewal of a note held by him against Joseph, and was duly credited to Joseph in the account, and then negotiated by the witness, and afterwards taken up by him and charged in the account to Joseph; that, so far as the witness knew, none of these three notes had been paid; that they always went forward in each year’s account, and made part thereof, and had now become the oldest items therein.
Said Whitney’s books of account, containing the account in question against Joseph, were put into the case by the plaintiff, and the defendant contended that the said notes, or some part of them, were proved thereby to have been paid, by legally appropriating the payments which were credited in said account.
Upon this point, the judge who tried the cause instructed the jury, that if, on inspecting the books, and upon the testimony of Whitney, they found that the said notes, or any of them, had been charged, as Whitney had testified, in general account, and had, by the acts and understanding of the parties, become proper items of account, and that payments had been credited by said Whitney to said Joseph, in the account in which said notes were charged as items, subsequently to such notes having so become items of account; and if there was no evidence to show that either Whitney or Joseph Strong had ever made, or intended to make, any particular appropriation of such payments, then it was the duty of the jury to apply such payments, so credited in account, to extinguish the earliest items of debit on said account; and if, by so applying such payments to the several items of debit, in the order of date, sufficient had been paid and credited to extinguish all items prior in date to said notes, and, in addition, to *326 extinguish said notes, then their verdict must be for the defendant.
This point was elaborately discussed, and a great many authorities were cited in regard to it, but it seems to depend upon plain and well-settled principles. The outstanding debts of the dissolved firm were charged by their creditor, Whitney, to the partner who continued the business. Now, according to the rule laid down, in the absence of other proof, such a charge transfers the account to the party undertaking to pay it. The earliest credits in the account must be applied to meet the earliest debits, and if those debits are joint, they are met and extinguished by the credits. This was decided in Clayton's case, 1 Mer. 572; Bodenham v. Purchas, 2 Barn. & Ald. 39; Farnum v. Boutelle, 13 Met. 159. It is the ordinary way in which accounts are managed, at the dissolution of copartnerships. The counsel referred to a case where, by a mere entry in the creditor’s books, an account was altered by debiting the new firm and crediting the old, without notice to either, and where yet, upon failure of the new firm, it was held that the creditor might recharge the account to the old firm. This was the case of Barker v. Blake, 11 Mass. 16, in which the evidence was, that the defendant was the surviving partner of a firm, consisting of himself and the elder and the younger Dix, with whom tire plaintiff once had dealings ; and that, at one time, the plaintiff, upon receiving certain goods in pledge, from the younger Dix, credited the firm with the balance of his account with them, and charged it to Dix alone, but without the privity of any of the debtors, and subsequently, after having given up a part of the pledge, recharged what remained due of the old account to the firm. This case was decided upon the ground, that entries in a merchant’s books are his private memoranda, and that, when made by him without the knowledge of other parties, those parties ought, in general, to acquire no' rights from the manner of making them. But that is very different from a case where the charges are transferred by consent of all parties, especially if enough has also been received, from the party last charged, -to pay them. In the case before us, the *327 notes were antiquated and had been long overdue, before they were indorsed to the plaintiff. He, therefore, stands on no better ground respecting them than did Whitney himself; and the latter had charged them to Joseph Strong alone, and had received from him enough to pay all the earlier items, including these notes. We think, then, the instruction of the court below was right; if the jury believed the facts to be as above stated, the original payee could not recover; and the indorsee of overdue notes had no better right than the in-dorser.
There were many other grounds taken in defence, and much evidence produced on both sides. The plaintiff produced the deposition of Henry B. Williams, to prove, amongst other things, the partnership of J. & M. Strong, which was denied by the defendants; and he proposed to read the answer of said Williams to an interrogatory of the plaintiff, which answer was in these words: “ I understood that Maltby Strong was in partnership with Joseph Strong, a portion of the time, from 1835 to 1840; how much of the time, I can’t say; I knew of the partnership existing in 1837, from information derived from Joseph Strong more particularly. Joseph was a brother of Maltby ; he died, I think, two or three years ago. Joseph Strong called on me, I think, in the fall of 1837, (I have no doubt about the time,) to indorse a note, purporting to be made by J. & M. Strong; in the conversation which followed his request for me to indorse, Joseph Strong stated that the firm still existed. I am able to fix the period, because it was soon after I got my new mill in operation, on Brown’s race. Joseph stated, that he wanted to get the note discounted at the Monroe Bank.”
The defendant objected to the reading of so much of said answer as purported to be information received from Joseph Strong, and the judge sustained the objection, and to this ruling the plaintiff objected. The jury found a verdict for the defendant. The plaintiff excepts to the foregoing ruling, and to the instructions given to the jury.
The question was, whether the partnership between the brothers existed at that time; and the argument of the plain *328 tiff was, that, when they were once proved to have been partners, the admission of one would conclude the other. This is true where the partnership has been proved aliwnde. It is the same in cases of conspiracy; the fact of a conspiracy existing between the parties being once proved, what is said by one will affect the rest; but the conspiracy must be first proved to have existed between the parties. The objection here is, that, in order to show Maltby to be a partner with Joseph, they first offer Joseph’s declarations to prove the partnership, and then seek to affect Maltby by other declarations of Joseph. If such evidence were admissible, any man might affect any other by his own declarations. The partnership must first be proved, before the declarations of one partner can affect the other.
The evidence to show the continuance of the partnership, after it had once been dissolved, with notice to the parties, must be as satisfactory.as that which is required to show its establishment. It was argued that, when a partnership is once shown to exist, its dissolution must be shown by evidence aliunde, before one partner can claim to be exempt from the acts or declarations of the other; but that is a mere question of notice, and Whitney, in this case, had full knowledge of the dissolution. Of course, if he had had no notice of the dissolution, after having had dealings with the firm, both of the members might have been bound by the acts of one, but that is not this case.
We think the decision of the court of common pleas right upon both points, and judgment must be entered for the defendant. ¡Exceptions overruled.